UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIAS PIZARRO-HERNANDEZ,

                              Plaintiff,

     v.

                                        5:04-CV-1358

COMMISSIONER OF SOCIAL                          (J. Sharpe)
SECURITY,

                              Defendant.
_____

APPEARANCES:                         OF COUNSEL:

McMAHON, KUBLIC, McGINTY        JENNIFER GALE SMITH, ESQ.
 & SMITH, P.C.
Attorneys for Plaintiff

GLENN T. SUDDABY                  WILLIAM H. PEASE
United States Attorney for the        Assistant U.S. Attorney
 Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed his first applications for disability insurance benefits and Supplemental Security Income (SSI) on July 14, 2000. At that time, plaintiff alleged disability due to chronic lumbago myositis and an unspecified emotional disorder.

(Administrative Transcript ("T") at 19).  Those claims were denied by an Administrative Law Judge in a decision dated April 16, 2002.  Plaintiff did not appeal that April 16, 2002 denial of benefits.

The present application for disability insurance benefits was filed on August 22, 2003.  (T. 76-78).  In his present application, plaintiff alleges disability based on his status post shoulder surgery, hypertension, high cholesterol, and depression.  (T. 98).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 27, 2004.  (T. 42-58).  The ALJ found that the plaintiff was not disabled.  (T. 19-32).  The ALJ's decision became the final decision of the Commissioner  when the Appeals Council denied plaintiff's request for review on November 9, 2004.  (T. 5-7).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ failed to give proper weight to the opinion of plaintiff's treating physician. (Brief, p. 4).

(2) The ALJ did not properly consider plaintiff's pain. (Brief, p. 9).

(3) Medical Vocational Guideline 201(h)(1) applies in this case. (Brief, p. 11).

(4) This case should be reversed for calculation of benefits. (Brief, p. 12).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

This court adopts the first five paragraphs of the facts contained in plaintiff's brief under the heading "Statement of Facts" on page 2 but does not adopt the remaining paragraphs since they contain argument.

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

>meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**1.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2. **Medical Evidence**

This court incorporates the summary of medical evidence contained in the Commissioner's brief on pages 1 through 5, with any additions stated in this Report-Recommendation.

## 3. **Non-Medical Evidence**

This court adopts the summary of the non-medical evidence in the Commissioner's brief at pages 5 and 6.

**4.      Treating Physician**

The medical conclusions of a treating physician are controlling if well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  *See also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998); *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).  An ALJ may not arbitrarily substitute his own judgment for competent medical opinion.  *Rosa v. Callahan*, 168 F.3d at 79 (citations omitted).   If the treating physician's opinion is not given "controlling weight," the ALJ must assess the following factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2-6); 416.927(d)(2-6).  Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (citing *Johnson v. Bowen*, 817 F.2d at 985).

Plaintiff argues that his treating physician, Dr. Ted Triana, opined that plaintiff had a very limited work ability. (Brief, p. 4).  Plaintiff's brief does not cite to the portions of the record for Dr. Triana's opinion or the MRI. (Brief, p. 4).  This court assumes that plaintiff is referring to the Residual Functional Capacity Assessment done by Dr. Triana on December 31, 2002. (T. 235-38).  Dr. Triana, a long time

treating physician, found that plaintiff could stand for less than 2 hours, sit for less than 2 hours, lift less than 10 pounds, and had limitations on pushing, pulling, and other movements. (T. 235-238). The findings upon which Dr. Triana based his assessment as stated in that document are a lumbosacral spine strain and what appears to be some type of tendinitis. Dr. Triana also placed limitations on postural movements, manipulative movements, and found environmental limitations. (T. 236-38). Dr. Triana stated that the manipulative limitations were based on plaintiff's statements that he had difficulty using his finger from time to time (T. 237), and that the environmental limitations were based on joint pain and swelling.

  The ALJ in a very thorough and detailed decision did not accept these findings of Dr. Triana because the objective medical evidence in the record does not support Dr. Triana's assessment of plaintiff's ability to work. (T. 27-28).
This court has reviewed the entire record and finds that the record contains substantial evidence to support the ALJ's rejection of Dr. Triana's assessment of plaintiff's ability to work.

  The record indicates that Dr. Triana treated plaintiff at the Syracuse Community Health Center for well over three years. The Progress Notes date from August of 2000 to December of 2003. (T. 168-216). Between August of 2000 and December of 2003, plaintiff went to the Syracuse Community Health Center many times, and the record contains many entries of visits during the year 2000 (T. 199-203); the year 2001 (T. 194-198); the year 2002 (T. 184-191); and the year 2003 (T. 168-182). During these many visits, plaintiff complained of joint pain (T. 186) and low back pain (T. 202,

7

203, 189, 195, 177). Plaintiff also complained of shoulder pain in his right shoulder that Dr. Triana characterized as chronic. (T. 183, 184, 188). The record indicates that on almost all of the visits to the Syracuse Community Health Center, plaintiff's vital signs were examined and occasionally Dr. Triana palpated plaintiff's back and joints. (T. 185, 177). It does not appear that specific tests were administered to test for range of motion in plaintiff's back or specific reflex problems.

Plaintiff's back strain appeared to get better and worse as reported in the record. During December of 2000, the record indicates that plaintiff had no new complaints, that his conditions were "under control", and that his back pain was "stable". (T. 199).

During early 2001, plaintiff slipped and fell on stairs in his home and complained of back and joint pain. (T. 194-198). During 2002, plaintiff continued to complain about low back pain and specifically after changing a tire during September of 2002. (T. 185). The record contains references to plaintiff's increased morbidity. (T. 184-185). There appears to be a reference similar to entries about plaintiff's mild depression. (T. 186).

During 2002, plaintiff continued to complain about joint pain, and Dr. Triana referred plaintiff to a rheumatologist for examination. During January of 2003, plaintiff was examined by Dr. Paul Phillips, a rheumatologist at SUNY Upstate Medical Center. Dr. Phillips performed an examination of plaintiff and found full range of motion in plaintiff's left shoulder but limited range of motion in plaintiff's right shoulder. Dr. Phillips found some tenderness over plaintiff's paraspinal muscles and believed there was a tear in plaintiff's right rotator cuff. (T. 156-157). Dr. Phillips

also stated that plaintiff's medications were being mismanaged since plaintiff *was on multiple NSAIDS (non steroidal anti-inflammatory drugs) at the same time.* (T. 157). Dr. Phillips concluded that there was *no sign* of any inflammatory arthritic disease. (T. 157).

During 2003, the plaintiff specifically requested that Dr. Triana issue a note stating that plaintiff could not work, and the records of Syracuse Community Health Center show that physical therapy was helping plaintiff's condition to some extent. (T. 178, 180). When Dr. Triana examined plaintiff during June of 2003, he found that plaintiff had minimal discomfort when Dr. Triana palpated plaintiff's lower back, and Dr. Triana also found minimal increase in tonicity, with *no gait abnormalities* and *no neurovascular deficits*. (T. 177).

During July of 2003, Dr. Triana believed that the medication Vicodin was causing bloating and discontinued plaintiff's use of that medication. Dr. Triana prescribed Extra Strength Tylenol since plaintiff indicated that the Extra Strength Tylenol had been helpful in the past. (T. 176). During August and September of 2003, Dr. Triana instructed plaintiff to continue using Vicodin and Celebrex despite plaintiff's reluctance to do so. In September, Dr. Triana wrote a note saying that plaintiff was not to return to work until November of 2003 and that plaintiff should continue with physical therapy. (T. 172).

In December of 2003, plaintiff "admitt[ed] he had not attended physical therapy", and when Dr. Triana emphasized the importance of physical therapy, plaintiff chose to "defer" attending physical therapy. (T. 168).

An MRI in November of 2002 identified a prominent partial tear in plaintiff's rotator cuff. (T. 148). Plaintiff's right rotator cuff tear was surgically repaired during June of 2003. (T. 244-250). Plaintiff also had an MRI examination of his lumbar spine during November of 2002. (T. 150, 285). The MRI showed a small posterior central herniation at L5-S1 without neural foramina narrowing and without impression upon the thecal sac. (T. 150). X-rays of plaintiff's lower back taken in connection with an independent medical examination during September of 2003 did not find any abnormalities. (T. 163). A lumbar x-ray showed that plaintiff's vertebral body height and disc spaces were maintained at all levels with no spondylolisthesis or spondylolysis, and no osteophytosis. (T. 163).

Although Dr. Triana's Functional Capacity Assessment in December of 2002 stated that he believed plaintiff could sit for less than 6 hours and stand for less than 2 hours, nine months later, during September of 2003, Dr. Triana stated that plaintiff would only be disabled for another two months until November of 2003. (T. 172). That statement appears to indicate that plaintiff was able to work after November of 2003. One month later, in December of 2003 when plaintiff returned to Dr. Triana, Dr. Triana emphasized the importance of physical therapy, and plaintiff stated that he did not want to attend physical therapy at that time. (T. 168).

Plaintiff's counsel argues that the MRI of plaintiff's spine supports Dr. Triana's assessment because the MRI showed disc herniation. However, a review of the MRI report shows that the herniation is referred to as "small." (T. 150, 285). The report also notes that although there was a small herniation, "there is *no* impingement upon

10

the thecal sac and there is ***no*** encroachment upon the neural foramina." *Id.* (emphasis added).  The neural foramina were "widely patent" at L3-4; L4-5, and L5-S1 bilaterally. *Id.*  The report clearly states that although there was a small disc herniation, there was no neural impingement.  Thus, it is unclear how counsel can argue that this MRI supports Dr. Triana's extremely restrictive RFC, particularly when Dr. Triana's notes, contemporaneous to his examinations, sometimes do not even mention any back pain or back impairment.

      The ALJ carefully examined the medical evidence in the file and found that the objective evidence did not support Dr. Triana's conclusion that plaintiff could not sit for 6 hours during an 8 hour work day or could not stand and walk for 2 hours during that day.  The ALJ also commented on Dr. Triana accepting plaintiff's subjective complaints (T. 27), plaintiff's travel out of the United States during May of 2002 (T. 27), the inconsistency between plaintiff's disability applications and the medical record (T. 28), the fact that plaintiff's disabling symptoms do not appear to have lasted for 12 consecutive months (T. 28), and the fact that a rheumatologist, Dr. Paul Phillips, found ***no sign*** of inflammatory arthritis but did note drug mismanagement with the plaintiff being on multi anti-inflammatory drugs at the same time.  (T. 25). The ALJ also noted that although plaintiff claimed at the hearing that his medications made him drowsy and nauseated, there is no indication in the record of those complaints to Dr. Triana despite the plaintiff's large number visits to Dr. Triana.

      The record contains an independent medical examination by Dr. Kalyani Ganesh, who examined many of plaintiff's muscular and exertional functions, and

found no gross limitation with respect to sitting, standing, walking or climbing, but did find moderate degrees of limitation regarding lifting, carrying, pushing, pulling, or overhead activity. (T. 162). Dr. Ganesh performed many tests concerning plaintiff's range of motion and strength. (T. 161).

In addition, the record shows that plaintiff was examined by Dr. Paul E. Phillips, a rheumatologist, and received a thorough physical examination showing full range of motion of plaintiff's hips, knees, and ankles. (T. 157).

The ALJ found that Dr. Triana's opinion was not well supported by the objective medical tests, and that it was not consistent with the record as a whole. This analysis satisfies the regulation concerning the evaluation of opinion evidence, 20 C.F.R. § 404.1527.

## 5.  **Pain and Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ's finding about plaintiff's credibility is ***fully supported*** by substantial evidence in the record. The ALJ cites numerous inconsistencies in the record including the discrepancy between plaintiff's testimony at the hearing and the medical record regarding plaintiff's complaints about nausea and drowsiness. (T. 25). The reference in the record to plaintiff's interest in obtaining statements about disability

13

(T. 25), plaintiff's activity in changing a tire, and plaintiff's receipt of unemployment compensation benefits are inconsistent with plaintiff claiming to be totally disabled. (T. 28). The record also contains indications that plaintiff was not attending physical therapy and specifically elected to "defer" attending physical therapy even though the physical therapy was beneficial (T. 168), and plaintiff's decision not to utilize certain medications when he had been instructed to do so (T. 175).

With respect to Dr. Phillips' comment that there was drug mismanagement in plaintiff's use of multiple non-steroidal anti-inflammatory medications at the same time (T. 157), it is not clear whether that was a difference of opinion between Dr. Phillips, a specialist in rheumatology, and Dr. Triana, a family physician, or whether plaintiff himself was misusing medications that were prescribed at different times. In any event, the record contains substantial evidence supporting the ALJ's conclusion that plaintiff's testimony was not fully credible.

### 6. **Vocational Expert (VE)**

If a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986). If the plaintiff's range of work is significantly limited by his non-exertional impairments, then the ALJ must present the testimony of a vocational expert or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.* A vocational expert may provide testimony regarding the existence of jobs in the national economy and

whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence,[1] a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for the VE's testimony. *See De Leon v. Secretary of Health and Human Services*., 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based her opinion." Dumas, 712 F.2d at 1554.

Plaintiff argues within the section of his brief about the treating physician that the ALJ did not properly interpret the VE's testimony. (Brief, p. 6,, 7). If Dr. Triana's limitations had been accepted, then it is clear that the VE would have agreed that plaintiff could not perform alternative work. (T. 53-57). The ALJ, however, found that Dr. Triana's Functional Capacity Assessment was ***not*** supported by the record and therefore, the limitations imposed by Dr. Triana were ***not*** accepted. Based on that finding, the ALJ utilized the appropriate restrictions when formulating his hypothetical question, and the VE's testimony about jobs that were available supports the ALJ's finding that plaintiff was able to perform alternative work, with specifically considered restrictions.

---

[1] *Dumas*, 712 F.2d at 1554 n.4.

**7.** **<u>Vocational Rule 201(h)(1)</u>**

Plaintiff's final argument is that the ALJ should have used vocational rule 201(h)(1) to find that plaintiff is disabled. These vocational rules are part of the medical-vocational guidelines at 20 C.F.R. Part 404, Subpt. P, App. 2. This rule is contained in the introductory paragraphs of the Medical Vocational Guidelines and is attempting to explain why the guidelines would dictate a finding of disability for a particular individual. This paragraph states that individuals who are 45 to 49 years old who cannot perform their previous work, are limited to sedentary work, and have the additional vocational limitations of both an unskilled or non-transferable background and an inability to communicate in English should be considered disabled.

This paragraph is *not* one of the guidelines, it is an explanation of why the grid will indicate that a certain type of individual is disabled. The actual section of the guidelines that relates to this introductory comment is 201.17. In any event, this rule and the guideline that goes with it, first assume that the plaintiff is restricted to *sedentary* work. The problem with plaintiff's argument is that the ALJ properly found that plaintiff was able to perform light work with some additional restrictions. Thus, plaintiff does not meet the first requirement of this rule.

The court would also point out that this vocational rule applies when the ALJ uses the guidelines exclusively, and it is determined that the plaintiff is restricted to sedentary work. In this case, the ALJ used a VE, thus, only used the guidelines as a "framework" for his decision, utilizing the VE to identify specific jobs that plaintiff could perform, given his additional restrictions. Because this court has found that the

16

ALJ made the proper determination of RFC and properly questioned the VE, the ALJ did not have to use Rule 201.00(h)(1) and the corresponding "grid" section.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 6, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge