**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ELIAS PIZARRO-HERNANDEZ,**

                                        **Plaintiff,**

                                                                **Civil No. 5:04-CV-1358**
                        **v.**                                  **(GLS/GJD)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                                        **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

McMAHON, KUBLICK LAW FIRM       JENNIFER GALE SMITH, ESQ.
500 South Salina Street
Suite 816
Syracuse, New York 13202

**FOR THE DEFENDANT:**

HON. GLEN T. SUDDABY             WILLIAM H. PEASE
United States Attorney           Assistant Attorney General
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Pursuant to 42 U.S.C. § 405(g) (2004), Elias Pizarro-Hernandez challenges the denial of disability benefits by the Commissioner of Social Security.  Pending are Pizarro-Hernandez's objections to Chief Magistrate Judge Gustave J. DiBianco's Report-Recommendation.  Upon careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in its entirety.[1]

## II.  Procedural History

After Pizarro-Hernandez initially filed for disability benefits in July 2000, his application was denied, and a hearing was conducted by an Administrative Law Judge (ALJ).  On April 16, 2002, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.  On August 22, 2003, Pizarro-Hernandez filed a second application for disability benefits, alleging disability based on post-shoulder surgery, hypertension, high cholesterol, and depression.  A second hearing was conducted by an ALJ on July 27, 2004, and the ALJ found that Pizarro-Hernandez was not disabled.

---

[1]The Clerk is directed to append Judge DiBianco's Report-Recommendation to this decision, and familiarity is presumed.

Pizarro-Hernandez filed a complaint in the Northern District of New York challenging the Commissioner's denial of benefits. *See Dkt. No. 1.* On March 6, 2006, Chief Magistrate Judge DiBianco issued a report recommending affirmance of the Commissioner's decision. *See Dkt. No. 10.* On March 13, Pizarro-Hernandez filed his objections. *See Dkt. No. 11.*

### III.  Discussion[2]

#### A.   Standard of Review

By statute and rule, district courts are authorized to refer social security petitions to Magistrate Judges for proposed findings and recommendations regarding disposition. *See* 28 U.S.C. § 636(b)(1)(A) & (B) (2005); N.D.N.Y R. 40.1, 72.3(d) (2006); General Order #18 (2003).

When a report and recommendation is filed, the parties have ten (10) days from receipt of the report to file specific, written objections to proposed findings and recommendations, and ten (10) days from the receipt of adversary objections to file responses. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b) (1993); N.D.N.Y R. 72.1(c).  The local

---

[2]The court adopts the factual summary in Chief Judge DiBianco's Report-Recommendation.  *See Dkt. No. 10.*

rules further require that the objections must specify the findings and recommendations which are the subject of the objections, and the substantive basis for these objections.  *See* N.D.N.Y R. 72.1(c).

The rules governing objections to report-recommendations in the *habeas corpus* context are the same rules applicable to social security petitions.  The district court must review *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y R. 72.1(c).  After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

If a party fails to object in a timely manner, it procedurally defaults and is not entitled to judicial review.  *See Almonte v. New York State Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *3 (N.D.N.Y. Jan. 18, 2006) (citation omitted).  "Although the doctrine of procedural default developed as a circuit appellate rule, it applies in the district courts as long as parties, including those appearing *pro se*, receive clear notice of the consequences

4

of their failure to properly object." *Id*; *see also Thomas v. Arn*, 474 U.S. 140, 149 & n.7 (1985). "[T]he notice requirement is satisfied if the report at least states that the failure to object will preclude appellate review[.]" *Almonte*, 2006 WL 149049, at *3 (citation omitted).[3] Although failure to object or timely object constitutes procedural default, lack of specificity also gives rise to default. *See id.*, at *4. The local rule requires that objections address specific findings and conclusions. *See id.* Therefore, a party that limits its specific objections to a part of a report's findings or recommendations procedurally defaults as to the remainder. *See id.* Frivolous or conclusory objections also fail to satisfy the specificity requirement. *See id.* Furthermore, mere resubmission of the same papers and arguments as submitted to the magistrate judge fails to comply with the specificity requirement and also results in default. *See id.*

The district court must review *de novo* those portions of the magistrate judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement. *See id.*, at *5;

---

[3]The following statement accompanies all magistrates' reports issued in this district: "[P]ursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the [c]lerk of [c]ourt. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**" *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e); *see Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1983); *Small v. Sec'y of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

*see also* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y R.

72.1(c).[4]  "*De novo* review requires that the court 'give fresh consideration

to those issues to which specific objections have been made.'  It will

examine the entire record, and make an independent assessment of the

magistrate judge's factual and legal conclusions."  *Almonte*, 2006 WL

149049, at *5 (citation omitted).  After review, the district court "may accept,

reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge...[and] may also receive further evidence or

recommit the matter to the magistrate judge with instructions."  28 U.S.C. §

636(b)(1)(C); FED. R. CIV. P. 72(b); *see also Almonte*, 2006 WL 149049, at

*3 (citations omitted).

 "The more complex question arises when a party procedurally

---

[4]The decision to use procedural default is up to the discretion of the district court.  *See Almonte,* 2006 WL 149049, at *4 (citation omitted).  "Such discretion is based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulted party."  *Id.* (citation omitted).  "As the Supreme Court has observed:

 '[T]he district court...must exercise supervision over the magistrate.  Even ... [if a procedural default rule permits a] ... district judge ... to refuse to review a magistrate's report absent timely objection ... [t]he rule merely establishes a procedural default that has no effect on the ... court's jurisdiction.  The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment.  Any party that desires plenary consideration need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard.'"  *Id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

defaults, the court is not statutorily mandated to conduct *de novo* review nor does it elect to do so, but it concludes that some review is in order nonetheless."  *Almonte*, 2006 WL 149049, at *5.  Under these circumstances, it is within the court's discretion to elect an appropriate review standard.  *See id.*

"28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure are both silent on the review standard under such circumstances."  *Id.*  "[D]istrict courts have applied standards with varying names and definitions."  *Id.*, at *6.  "[S]ome adopt the 'clearly erroneous' standard that is articulated in the statute and federal rule governing review of a magistrate judge's nondispositive orders, and referenced in the 1983 Advisory Committee Note."[5]  *Id.* (citations omitted).  "Given the definition typically assigned to 'clearly erroneous,' the courts review a report to determine whether the findings are against the clear weight of the evidence, or whether the recommendations cause the court to definitely

---

[5]"The Rule 72(b) Advisory Committee Note suggests that the court will review for 'clear error,' stating:
'When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  FED. R. CIV. P. 72(b) advisory committee's note (1983) (citations omitted); *see also Almonte*, 2006 WL 149049 at *5 (citations omitted).  *Almonte*, 2006 WL 149049, at *5 (citations omitted).

and firmly conclude that a mistake has been committed." *Id.* "Other courts have adopted a 'contrary to law' standard which means that the report fails to apply, or misapplies, relevant statutes, case law, or rules of procedure." *Id.* (citations omitted).  "When excusing procedural default in the interests of justice, the Circuit has reviewed the underlying decision or report for 'plain error.'" *Id.* (citations omitted).  "Plain error is one that is clear or obvious and affects substantial rights." *Id.* (citations omitted).

"Mindful that district courts retain jurisdictional authority over all dispositive issues, this court routinely reviews reports before entering final judgment whether objections are registered or not." *See Almonte*, 2006 WL 149049, at *6.  When the court does so, however, it is aware that the reports are generated by magistrate judges with extraordinary professional and judicial experience." *Id.*  "Accordingly, when required by statute or rule or when the court's routine review so dictates, the court will make a *de novo* determination of findings and recommendations." *Id.*  "Absent *de novo* review, the court will apply a 'clearly erroneous' standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Id.*  "Furthermore, the court will routinely identify issues

8

which have been procedurally defaulted, and articulate the standard of review applied to all issues." *Id.*

**B.    Objections**

   **1.    Specific Objections**

Pizarro-Hernandez's objections are generally a reiteration of the arguments he submitted to the Chief Magistrate Judge.  However, to the extent that they attack the specific findings in the Report-Recommendation, the court applies a *de novo* standard of review.

Pizarro-Hernandez objects to Chief Judge DiBianco's conclusion that the medical evidence did not support Dr. Triana's[6] assessment of Pizarro-Hernandez's ability to work.  He claims that Dr. Triana's opinion is supported by a MRI showing disc herniation, his own testimony, and the fact that he had surgery on his right arm.  Finally, he claims that the ALJ substituted his own opinion for that of Dr. Triana's.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)

---

[6]Dr. Ted Triana is one of Pizarro-Hernandez's primary care physicians.

(2006); *see also Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005).  An ALJ may not "arbitrarily substitute his own judgment for [a] competent medical opinion."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citation omitted).  If the treating physician's opinion is not given "controlling weight," the ALJ must consider the entire record and give special assessment to several factors to determine how much weight to afford the opinion.  *See* 20 C.F.R. § 404.1527(c)(2).  The factors are: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is]... 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133-134 (2d Cir. 1999) (citation omitted).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions...."  *Id.*  Thus, a treating physician's disability assessment is not determinative.  *See id.*  Furthermore, where the

10

evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The record shows that Dr. Triana treated Pizarro-Hernandez at the Syracuse Community Health Center for over three years.  (T. 168-216).  During this time, Pizarro-Hernandez complained of joint pain, low back pain, and right shoulder pain.  (T. 183-4, 186, 189, 195, 202-3).  As Chief Judge DiBianco properly noted, Pizarro-Hernandez's back pain appeared to improve and worsen as reported in the record.  In December 2000, Pizarro-Hernandez's conditions were "under control," and his back pain was "stable."  (T. 199).  After he slipped and fell in 2001, Pizarro-Hernandez continued to complain about joint pain, and Dr. Triana referred him to Dr. Paul Phillips, a rheumatologist.  Dr. Phillips' examination showed full range of motion in Pizarro-Hernandez's left shoulder and limited range of motion in his right shoulder.  (T. 156-7).  Dr. Phillips concluded that there was no sign of any inflammatory arthritic disease.  *Id.*

In 2003, Pizarro-Hernandez requested that Dr. Triana write a note stating that he could not work.  (T. 181).  In June, Dr. Triana's examination

showed that Pizarro-Hernandez had minimal discomfort in his lower back and showed no gait abnormalities or neurovascular deficits.  (T. 177).  After adjusting Pizarro-Hernandez's medications, Dr. Triana wrote a note stating that Pizarro-Hernandez could not return to work until November 2003 and that he should continue with physical therapy.  (T. 172).  In December, Pizarro-Hernandez admitted that he had not attended physical therapy and explained that he chose to "defer" attending physical therapy.  (T. 168).

The MRI report to which Pizarro-Hernandez cites as support for his disability explains that the disc herniation is "small."  (T. 150, 285).  The report also notes "no impingement upon the thecal sac and ... no encroachment upon the neural foramina."  *Id*.  Therefore, as Chief Judge DiBianco properly concluded, the objective medical evidence in the record does not support Dr. Triana's assessment regarding Pizarro-Hernandez's ability to work.

Chief Judge DiBianco also considered Pizarro-Hernandez's travel outside of the United States during May 2002, the inconsistency between the disability applications and medical record, and the fact that Pizarro-Hernandez's symptoms did not last a consecutive twelve months in finding that the ALJ's disability determination was supported by substantial

12

evidence.  Moreover, an independent medical examination by Dr. Kalyani Ganesh found "no gross limitation with respect to sitting, standing, walking, and climbing."  (T. 162).  Accordingly, Chief Judge DiBianco properly found that the ALJ's findings were supported by substantial evidence.

### 2.   Unspecific Objections

Pizarro-Hernandez's final objection is a reiteration of an argument he initially raised before Chief Magistrate Judge DiBianco, and the court will apply a clearly erroneous standard of review.  Pizarro-Hernandez argues that the ALJ formed a disability determination that was inconsistent with the testimony of Dr. Manzi, the vocational expert.  *See Dkt. No. 11.*  This objection mirrors an argument Pizarro-Hernandez raised in the legal brief he submitted to the Chief Magistrate Judge for report-recommendation, and it does not specifically analyze Chief Judge DiBianco's report.  *See Dkt. No. 8.*  As explained, a party's failure to object or to specifically object constitutes procedural default, and no judicial review is required whatsoever.  *See Almonte,* 2006 WL 149049, at *6.  Moreover, resubmission of the same argument  submitted to the magistrate judge fails to comply with the specificity requirement.  *See id.*  Accordingly, as to this objection, the court applies the clearly erroneous standard of review.

13

In analyzing Pizarro-Hernandez's claim, Chief Magistrate Judge DiBianco properly concluded that Dr. Triana's opinion was not supported by the record.  In light of this finding, Chief Judge DiBianco held that the ALJ appropriately discounted the portion of the vocational expert's testimony based on Dr. Triana's assessment.  As Chief Judge DiBianco properly explained, there must be substantial record evidence to support the assumption upon which the vocational expert based her opinion.  *See Yoxall v. Apfel*, 3:99-cv-656, 2001 U.S. Dist. LEXIS 7169, at *64 (D. Conn. March 30, 2001) (citation omitted).  In other words, because the ALJ deemed Dr. Triana's assessment incredulous, he also properly discounted the portion of the vocational expert's testimony based on Dr. Triana's unsubstantiated opinion.  Chief Judge DiBianco determined that the record supports the ALJ's finding that Pizarro-Hernandez was able to perform alternative work based on the second portion of the vocational expert's testimony regarding alternative jobs in the marketplace.

In essence, Pizarro-Hernandez's additional objection is a restatement of the argument he submitted to the Chief Magistrate Judge.  Accordingly, Pizarro-Hernandez procedurally defaulted, and his objection has been reviewed under a clearly erroneous standard.  The court agrees with Chief

14

Judge DiBianco's analysis, finding no clear error, and adopts the Report-Recommendation in its entirety.

## IV.  **Conclusion**

For the reasons stated above, this court accepts and adopts the recommendation of Chief Judge DiBianco for the reasons stated in the March 6, 2006 Report-Recommendation.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and the complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

June 15, 2006
Albany, New York

Gary L. Sharpe
U.S. District Judge